# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 25-30191 |
|     The Bellevue Hospital | : | Chapter 11 |
| | : | |
|     Debtor. | : | Judge Mary Ann Whipple |

## MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POST-PETITION FINANCING FROM FIRELANDS, (B) USE CASH COLLATERAL, (C) PROVIDE ADEQUATE ASSURANCE PROTECTION TO SENIOR SECURED CREDITOR; AND, (II) GRANTING RELATED RELIEF

The Bellevue Hospital, the debtor and debtor in possession (the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed undersigned counsel, files this motion ("Motion") pursuant to sections 105, 361, 362, 363, 364 and 507(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001, 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order" and together with the Interim Order, the "Proposed Orders"), granting the following relief:

    i.    authorizing the Debtor to enter into a revolving credit facility (the "DIP Facility," and obtain advances thereunder, the "Facility Draws") for up to $1,500,000.00 on a final basis (collectively, the "DIP Obligations"), pursuant to the Post-Petition Loan and Security Agreement, and Promissory Note and related and ancillary documents as between the Debtor and Firelands Regional Health System (in its capacity as post-petition lender, the "DIP Lender") dated as of February 5, 2025 (as the same may be amended, restated, supplemented,

1

or otherwise modified from time to time in accordance with its terms and the terms of the DIP Order (collectively, the "DIP Facility Loan Documents");

ii. granting to the DIP Lender automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), which liens shall be on the terms and subject to the relative priorities set forth in this Interim Order, subject to the Carve-Out (as defined herein), the Prepetition Senior Secured Creditor Liens (as defined herein), and the Adequate Protection Liens (as defined herein);

iii. authorizing the Debtor to use Cash Collateral (as defined herein) which is subject to a first priority lien and security interest in favor of The Bank of New York Mellon Trust Company, N.A., in its capacity as Master Trustee (the "Master Trustee") for the benefit of Fifth Third Bank, National Association ("Fifth Third" and together with Master Trustee, the "Senior Secured Creditor");

iv. granting adequate protection to the Senior Secured Creditor with respect to the Debtor's use of the Senior Secured Creditor's Cash Collateral;

v. modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor, the DIP Lender, and/or the Senior Secured Creditor to implement and effectuate the terms and provisions of the DIP Facility Loan Documents and this Interim Order;

vi. subject to entry of the Final Order, waiving (y) the Debtor's ability to surcharge against the Prepetition Collateral (as defined below), the DIP Collateral and/or the Adequate Protection Collateral (as defined below) pursuant to section

2

506(c) of the Bankruptcy Code or any other applicable principle of equity or law and (z) the applicability of the "equities of the case" exception under 552(b) of the Bankruptcy Code;

vii.     scheduling a final hearing ("Final Hearing") to consider entry of the Final Order within twenty-eight (28) days of the Petition Date;

viii.    waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

ix.      granting related relief.

In support of this Motion, the Debtor relies on and incorporates by reference the *Declaration of Sara K. Brokaw* (the "Brokaw Declaration") and the *Declaration of Darrell M. Lentz* (the "Lentz Declaration" and together with the Brokaw Declaration, the "First Day Declarations"), and respectfully represents as follows:

### Bankruptcy Rule 4001 Concise Statement[1]

1.      Pursuant to Bankruptcy Rules 4001(b)(1), the Debtor submits the following concise statement of the material terms of the Interim Order:

| Summary of Material Terms | | Location |
|---|---|---|
| **Borrower**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The Bellevue Hospital | Recital paragraph (i) |
| **DIP Lender**<br>*Bankruptcy Rule 4001(c)(1)(B)* | Firelands Regional Medical Center | Recital paragraph (i) |

---

[1] Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order. To the extent there is a conflict between the Motion and the Interim Order, the Interim Order shall control. The Debtor reserves the right to supplement the statements made herein.

3

| | | |
|---|---|---|
| **Amount and Facility** <br> *Bankruptcy Rule 4001(c)(1)(B)* | $1,500,000 revolving line of credit facility in new money financing ("<u>DIP Facility</u>") | Recital paragraph (i) |
| **DIP Budget and Related Covenants** <br> *Bankruptcy Rule 4001(c)(1)(B)* | The DIP Facility is subject to the budget (the "<u>Budget</u>"), a copy of which is attached to the proposed Interim Order at <u>Exhibit A</u> <br><br> 10% Permitted Budget Variance. | Decretal paragraph 16(i) and (ii) and Exhibit A to proposed interim order |
| **Reporting** <br> *Bankruptcy Rule 4001(c)(1)(B)* | Weekly Budget Variance Reports | Decretal paragraph 16(ii) |
| **Security and Priority** <br> *Bankruptcy Rule 4001(c)(1)(B)(i)* | First priority lien and security interest in Unencumbered Real Estate, subject to Carve-Out; <br><br> Second priority lien and security interest in all other assets, subject to first priority lien of Senior Secured Creditor, and Carve-Out; <br><br> No lien on Avoidance Actions. | Decretal paragraphs 5, 6 and 7 |
| **Proposed Adequate Protection** <br> *Bankruptcy Rules 4001(b)(1)(B)(iv) & 4001(c)(1)(B)(ii)* | Senior Secured Creditor: <br> 1. Replacement Liens; <br> 2. Junior Liens on DIP Collateral; <br> 3. Super Priority Administrative Expense Claim; <br> 4. Lien on Avoidance Actions solely to the extent of diminution; <br> 5. Continued monthly interest payments; <br> 6. Reporting obligations. <br><br> Other Secured Creditors (if any): <br> 1. Super Priority Administrative Expense Claim. | Decretal paragraphs 12 and 13 |
| **Stipulations as to Prepetition Claims and Liens** <br> *Bankruptcy Rule 4001(c)(1)(B)(iii)* | The Interim Order contains provisions or findings of fact that bind the Debtor's estate with respect to the validity, perfection or amount of the Prepetition Lender's claims and includes a waiver of claims against the Prepetition Lender. The Debtor's stipulations shall be binding on third parties, subject a Challenge as described below. | Findings paragraph C; decretal paragraph 14; decretal paragraph 15(ii) and (iii) |
| **Automatic Stay Waiver/Modification** | Pursuant to the Interim Order, the automatic stay imposed by section 362 of the Bankruptcy Code shall | Decretal paragraph 27 |

4

| | | |
|---|---|---|
| *Bankruptcy Rule 4001(c)(1)(B)(iv)* | be modified as necessary to permit the Debtor to perform its obligations, and to permit the DIP Lenders to enforce their rights, in connection with the DIP Facility. | |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens** *Bankruptcy Rule 4001(c)(1)(B)(vii)* | The Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Adequate Protection Liens, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or Adequate Protection Liens, or to entitle the DIP Liens or Adequate Protection Liens to the priorities granted herein. | Decretal paragraph 20 |
| **506(c) Waiver** *Bankruptcy Rule 4001(c)(1)(B)(x)* | Subject to entry of the Final Order, the costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Cases at any time shall not be charged against the DIP Lender, its respective claims, the Accounts or Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender. | Decretal paragraph 15(i) |
| **Entities with an Interest in Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | The Senior Secured Creditor | Findings paragraph C(1)(a) |
| **Purposes for Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(ii)* | Only for the satisfaction of the costs and expenses of administering the Chapter 11 Cases, in accordance with the Budget. | Decretal paragraph 10 |
| **Material Terms of the Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(iii)* | Authorized to use Cash Collateral consistent with Budget until three (3) days' after written notice of an Event of Default, as described below. | Decretal paragraph 10 |
| **Duration of Use of Cash Collateral/ Events of Default** | Use granted through Termination Event, subject to applicable notice and cure periods. | Decretal paragraph 21 |

5

| | | |
|---|---|---|
| *Bankruptcy Rules 4001(b)(1)(B)(iii) & 4001(c)(1)(B)* | Events of Default:<br><br>1. Debtor fails to perform any of its material obligations;<br><br>2. any representation or warranty proves to have been false in any material respect as of the time when made or given;<br><br>3. any other person or entity obtains an order permitting the use of Cash Collateral without the written consent of the DIP Lender or Senior Secured Creditor;<br><br>4. a Variance Report provided to DIP Lender or Senior Secured Creditor shows a Prohibited Variance;<br><br>5. Debtor's failure to satisfy case milestones specified in Interim Order;<br><br>6. the Interim Order ceases to be in full force and effect for any reason other than as a result of entry of a Final Order superseding this Interim Order;<br><br>7. the Court enters a final order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the consent of the DIP Lender and Senior Secured Creditor;<br><br>8. Stay relief is granted to anyone other then DIP Lender and Senior Secured Creditor;<br><br>9. the Debtor (i) creates any postpetition lien or security interests or (ii) incurs or suffer to exist any material postpetition liens or security interests;<br><br>10. the Debtor obtains nonconsensual priming liens over the Senior Secured Creditor's Liens and Security Interests;<br><br>11. the Debtor shall create, incur or suffer to exist any other claim which is *pari passu* with or | |

| | senior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims;<br><br>12. the Court enters the Final Order without (i) providing for any of the specific waivers with respect to "marshalling," "equities of the case," and "surcharge" under section 506(c) of the Bankruptcy Code, or (ii) granting the Senior Secured Creditor the Adequate Protection Liens and Adequate Protection Superpriority Claims with respect to, the Avoidance Actions and proceeds thereof; and<br><br>13. the cessation of all or any material part of the Debtor's business operations. | |
|---|---|---|
| **Milestones**<br>*Bankruptcy Rule 4001(c)(1)(B)* | The DIP loan shall be subject to the satisfaction of the timelines and deadlines set out in the Restructuring Support Agreement ("<u>RSA</u>"), to be incorporated into the Proposed Orders without amendment or extension except as approved by written agreement of Firelands, TBH and Senior Secured Lender, and the satisfaction of such deadlines shall be a condition precedent to any draw against the DIP Loan. | Decretal paragraph 22(v), (vi), (vii), and (viii) |
| **Carve-Out**<br>*Bankruptcy Rules 4001(b)(1)(B)(iii) & 4001(c)(1)(B)* | 1. Fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);<br><br>2. Key Employee Incentive Plan ("<u>KEIP</u>") payment obligations;<br><br>3. Debtor's claims noticing agent pursuant to Budget; AND<br><br>4. Professional Fees pursuant to Budget. | Decretal paragraphs 17, 18 and 19 |
| **Liens on Avoidance Actions** | Senior Secured Creditor shall be granted a lien on Avoidance Actions solely to the extent of any diminution in value of its secured position. | Decretal paragraph 12(i) |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt** | The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. | N/A |

25-30191-maw    Doc 34    FILED 02/05/25    ENTERED 02/05/25 17:55:10    Page 7 of 70

| Disparate Treatment of Professionals Under Carve-Out | The Interim Order contains no provision for disparate treatment for Committee professionals, if any, with respect to the Carve-Out. | N/A |
|---|---|---|
| Non-Consensual Priming Liens | The Interim Order contains no provision for non-consensual priming liens. | N/A |

## Jurisdiction and Venue

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.     On the date hereof (the "Petition Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case, and no committee have been appointed or designated.

4.     A description of the Debtor's operations, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Declarations filed contemporaneously herewith and incorporated herein.

## I.     The Debtor's Prepetition Secured Indebtedness

### A.     Fifth Third Bank

5.     Debtor is indebted to Senior Secured Creditor pursuant to, among other things: (i) that certain Master Trust Indenture, dated as of July 1, 2003, by and between Master Trustee (as successor in trust to Fifth Third) and Debtor who is the sole Obligated Issuer thereunder and sole

8

member of the Obligated Group bound thereby, as supplemented, amended or otherwise modified from time to time (as amended, supplemented or otherwise modified from time to time, the "<u>Indenture</u>"); and (ii) certain Obligations issued under and made pursuant to the Indenture, including: (w) Obligation No. 6, dated as of August 28, 2012, made by Debtor to Fifth Third in the original principal amount of $10,000,000, (x) Obligation No. 7, dated as of September 12, 2012, made by Debtor to Fifth Third in the original principal amount of $8,500,000, (y) Obligation No. 8, dated as of October 3, 2012, made by Debtor to Fifth Third in the original Principal amount of $2,569,152.82, and (z) Obligation No. 9, dated as of November 30, 2017, made by Debtor to Fifth Third in the original principal amount of $9,000,000 (collectively with all other amount owed by Debtor and its affiliates and subsidiaries to Fifth Third, the "<u>Senior Secured Creditor Prepetition Obligations</u>").

6.     the Senior Secured Creditor Prepetition Obligations are secured by (i) validly perfected, unavoidable, first-priority mortgage liens on certain of Debtor's real estate, including the hospital facilities located at 1400 West Main Street, Bellevue, Ohio 44811, and an office building located at 102 Commerce Park Drive, Bellevue, Ohio 44811 (together, the "<u>Prepetition Senior Secured Creditor Real Estate Collateral</u>"); and (ii) validly perfected, unavoidable, first priority liens and security interests in substantially all of Debtor's tangible and intangible personal property (collectively, the "<u>Prepetition Senior Secured Creditor Personal Property Collateral</u>" and together with the Prepetition Real Estate Collateral, the "<u>Prepetition Senior Secured Creditor Collateral</u>"), including all of Debtor's accounts, accounts receivables, cash, and cash equivalents, including Employee Retention Credit refunds, and federal grants and all proceeds of the foregoing (collectively, the "<u>Cash Collateral</u>") (collectively, the "<u>Prepetition Senior Secured Creditor Liens</u>

25-30191-maw    Doc 34    FILED 02/05/25    ENTERED 02/05/25 17:55:10    Page 9 of 70

and Security Interests"), each of which are more fully described in the applicable Prepetition Senior Secured Creditor Loan Documents.

7.     As of the Petition Date, the outstanding principal balance of the Senior Secured Creditor Prepetition Obligations for which the Debtor is indebted was $17,331,975.54, exclusive of accrued and unpaid interest, fees, costs and expenses (including attorneys', accountants', appraisers' and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Indenture or any other loan document relating to the Senior Secured Creditor Prepetition Obligations).  Approximately $2,400,000 of the Cash Collateral is currently in a blocked account held with Fifth Third (the "Pledged Account") to be released in accordance with the Budget and terms of the proposed Interim Order.  Additionally, Fifth Third is holding $150,000 in a separate blocked account as security for the Debtor's continued use of its credit card, subject to continued use and security as set forth in the proposed Interim Order.

**B.     Firelands Regional Health System**

8.     Debtor is indebted to Firelands Regional Health System (in its capacity as prepetition lender, "Firelands", and together with the Senior Secured Creditor, the "Prepetition Secured Parties") pursuant to the terms of a Promissory Note (Non-Revolving Credit), in the amount of $800,000 (the "Prepetition Firelands Obligations" and together with the Senior Secured Creditor Prepetition Obligations, the "Prepetition Obligations").  The Prepetition Firelands Obligations are secured by a valid and enforceable, first priority pledge and security interest in: (i) twenty-five (25) units in The Firelands-Bellevue Real Estate Holding Company, LLC and (ii) twenty-five (25) units in The Firelands Bellevue Urgent Care Operating Company, LLC (together, the "Prepetition Firelands Collateral" and together with the Prepetition Senior Secured Creditor Collateral, the "Prepetition Collateral") (the "Prepetition Firelands Liens and Security Interests"

10

and together with the Prepetition Senior Secured Creditor Liens and Security Interests, the "Prepetition Liens and Security Interests").

## II.       The Debtor's Need for Post-Petition Financing and Access to Cash Collateral

9.       The Debtor has a pressing need for the continued use of Cash Collateral to continue operating as a going concern (including funding its day-to-day operations which includes payroll, vendors, and the costs of this Chapter 11 Case), minimize disruption, rebut any skepticism regarding the Debtor's ability to operate as a going-concern, and to ensure stable hospital operations in response to this Chapter 11 Case.  In the absence of the continued use of the Cash Collateral, serious and irreparable harm to the Debtor and its estate will occur and impair, if not wholly undermine, the Debtor's efforts to reorganize.

### III.       The Debtor's DIP Financing / Cash Collateral Negotiations

10.       The Debtor communicated with both Firelands and various other parties, including Fifth Third, about their willingness to provide sufficient financing, including financing on a junior basis. However, none of these parties were willing to provide financing on an unsecured, non-superpriority or junior basis. As an original member and lender of the Debtor, Firelands was the natural candidate to serve as the postpetition lender on a superpriority basis. Among other issues, any alternative lender funding on a super-priority basis would have had to either (i) gain the consent of the Senior Lender to prime the Senior Secured Creditor Prepetition Obligations or (ii) attempt to undertake (or cause the Debtor to undertake) a priming fight at considerable cost and with little practical likelihood of success. In addition, given the circumstances facing the Debtor's business, the Debtor has not had any realistic prospects for raising alternative capital. After carefully evaluating their options in light of such circumstances, the Debtor engaged in extensive,

good faith, and arm's-length negotiations with Firelands to obtain the best financing terms available.

## IV.    The DIP Facility And Use of Cash Collateral Are In the Best Interests of the Estate

11.    Without the immediate entry of this Interim Order and the resulting access to cash and financing, the Debtor and its bankruptcy estate will be immediately and irreparably harmed. The continued viability of the Debtor and its hospital operations will be severely jeopardized. Patient care will be at risk, as will the ultimate ability of the Debtor to offer its critical services to the communities it serves.

### Relief Requested

10.    The Debtor requests entry of the Interim Order: (i) authorizing the Debtor to obtain the DIP Facility; (ii) authorizing the Debtor to execute and deliver the DIP Loan Documents in accordance with the terms of the DIP Loan Agreement; (iii) authorizing the Debtor to continue to use Cash Collateral in which the Prepetition Secured Parties have an interest in accordance with the terms and conditions of the Interim Order, and granting adequate protection to the Prepetition Secured Parties to secure, *inter alia,* postpetition financing under the DIP Loan Documents and the use of Cash Collateral; (iv) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order and DIP Facility Loan Documents, subject to notice and a hearing as provided herein; and (v) granting related relief.

## Basis for Relief

I. **The Debtor Should Be Authorized To Obtain Postpetition Financing On A Secured And Superpriority Administrative Basis.**

   A. **The Debtor Exercised Sound And Reasonable Business Judgment In Deciding to Enter The DIP Facility.**

11.     Provided that an agreement to obtain postpetition credit is consistent with the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in exercising its sound business judgment in obtaining such credit. *See, e.g., In re L.A. Dodgers LLC,* 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re LATAM Airlines Grp. S.A.,* 620 B.R. 722, 768 (Bankr. S.D.N.Y. 2020) ("Generally, in evaluating the merits of proposed post-petition financing, courts will defer to a debtor's business judgment provided that the financing does not unduly benefit a party in interest at the expense of the estate.") (internal citation omitted); citing *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

12.     Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action appears to enhance the debtor's estate." *In re Weiss Multi-Strategy Advisors LLC*, No. 24-10743(MG) 2024 Bankr. LEXIS 2866, at *22-23 (Bankr. S.D.N.Y. Nov. 26, 2024); *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC),* 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 566 n.16 (8th Cir. 1997) (internal alterations and quotations

omitted)); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999) (citations omitted).

13.    Under the circumstances, the Debtor's determination to move forward with the DIP Facility is a sound exercise of their business judgment. Most importantly, based on the Debtor's cash projections, without access to the DIP Facility, the Debtor will likely ultimately become unable to pay expenses necessary to sustain its operations, which would irreparably impair the value of the Debtor's estate during this Chapter 11 Case and risk patient safety. The DIP Facility is currently the only available and viable source of future liquidity to make such payments. In addition, the Debtor negotiated the terms of the DIP Facility with the DIP Lender in good faith, at arm's length, and with the assistance of the Debtor's advisors. Based on such negotiations, the Debtor believes the terms of the DIP Facility, as set forth in the DIP Loan Documents and Proposed Orders, are fair, reasonable, reflective of the market for financings of this type, offers a significant benefit to the Debtor's estate, and is the best financing available under the circumstances. Moreover, the milestones in the Proposed Orders are tailored to comport with the timeline of the process for the RSA transactions. Accordingly, the Court should authorize the Debtor's entry into the DIP Facility as a reasonable exercise of the Debtor's business judgment.

**B.    The Debtor Meets The Conditions Necessary Under Section 364(c) To Obtain Postpetition Financing On A Secured And Superpriority Administrative Basis.**

14.    The Debtor proposes to obtain financing under the DIP Facility by providing the DIP Lender the DIP Liens and DIP Superpriority Claims pursuant to section 364(c) of the Bankruptcy Code. Specifically, the Debtor proposes to provide the DIP Lender first priority DIP Liens on all Accounts, together with any proceeds, products or profits of the Accounts, whether

14

arising under section 552(b) of the Bankruptcy Code or otherwise (subject in each case only to the Carve-Out and Prepetition Permitted Liens).

15.     The Debtor meets the requirements for relief under section 364(c) of the Bankruptcy Code, which permits a debtor, with Court authorization, to obtain postpetition financing and, in return, to grant superpriority administrative status and liens on its property. Specifically, section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:
>
>> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>>
>> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>>
>> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). In evaluating proposed postpetition financing under section 364(c) of the Bankruptcy Code, courts perform a qualitative analysis and consider whether (a) unencumbered credit or alternative financing without superpriority status is available to the debtor, (b) the credit transactions are necessary to preserve assets of the estate, and (c) the terms of the credit agreement are fair, reasonable, and adequate. *See, e.g.*, *In re LATAM Airlines Grp. S.A.*, 620 B.R. at 768; *In re Los Angeles Dodgers,* 457 B.R. at 312; *In re Aqua Assoc.,* 123 B.R. 192, 195–99 (Bankr. E.D. Pa. 1991); *In re St. Mary Hosp.,* 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *In re Crouse Group, Inc.,* 71 B.R. 544, 549-51 (Bankr. E.D. Pa. 1987); *see also Bland v. Farmworker Creditors,* 308 B.R. 109, 113–14 (S.D. Ga. 2003); *In re Ames Dep't Stores,* 115 B.R. at 37–40.

16.     Here, the Debtor satisfies the necessary conditions under section 364(c) of the Bankruptcy Code for authority to enter into the DIP Loan Documents. Given the circumstances,

15

the Debtor could not obtain credit on an unsecured or administrative expense basis. For all the reasons discussed further below, the Debtor respectfully submits that the Court should grant the Debtor's request to enter into the DIP Loan Documents pursuant to section 364(c) of the Bankruptcy Code.

1. The Debtor is unable to obtain financing on more favorable terms than the DIP Facility.

17. In order to satisfy this test, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code. *In re LATAM Airlines Grp. S.A.*, 620 B.R. at 767; *In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."); *In re Pearl-Phil GMT (Far East Ltd. v. Caldor Corp.,* 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense); *In re Ames Dep't Stores, Inc.,* 115 B.R. at 40 (approving financing facility and holding that debtor made reasonable efforts to satisfy the standards of section 364(c), to obtain less onerous terms where debtor approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders). This is especially true where time is of the essence. *See In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987).

18. Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor on an unsecured or administrative priority basis, "it would be unrealistic or unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.,* 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.,* 789 F.2d at 1088 (demonstrating that credit was unavailable absent the senior lien by

16

establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Ames Dep't Stores, Inc.,* 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code).

19.     The Debtor communicated with both Firelands and various other parties, including Fifth Third, about their willingness to provide sufficient financing, including financing on a junior basis. However, none of these parties were willing to provide financing on an unsecured, non-superpriority or junior basis.

20.     As an original member and lender of the Debtor, Firelands was the natural candidate to serve as the postpetition lender on a superpriority basis. Among other issues, any alternative lender funding on a super-priority basis would have had to either (i) gain the consent of the Senior Lender to prime the Senior Secured Creditor Prepetition Obligations or (ii) attempt to undertake (or cause the Debtor to undertake) a priming fight at considerable cost and with little practical likelihood of success. In addition, given the circumstances facing the Debtor's business, the Debtor has not had any realistic prospects for raising alternative capital.

21.     After carefully evaluating their options in light of such circumstances, the Debtor engaged in extensive, good faith, and arm's-length negotiations with Firelands to obtain the best financing terms available. Because the DIP Facility provides the Debtor with the liquidity they project will eventually be needed at the lowest cost available, the Debtor has concluded that the DIP Facility represents the Debtor's best (and only) available post-petition financing option. For these reasons, the Debtor submits that it has met the standard for obtaining the proposed DIP financing.

2. <u>The DIP Facility is necessary to preserve the value of the Debtor's Estate.</u>

22. The Debtor, as debtor in possession, has a fiduciary duty to protect and maximize their estates' assets. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004). The Debtor's ultimate access to postpetition financing is essential to its ability to effectively carry out that duty. Without the proceeds of the DIP Facility, the Debtor projects that it will eventually be unable to fund critical payments in the ordinary course of business that are essential to the Debtor's continued operations, which would have irreparable consequences to the Debtor's estates and stakeholders. The DIP Facility will provide the Debtor with sufficient liquidity to fund their operations and maximize the value of their assets as they work toward the RSA transactions.

3. <u>The terms of the DIP Facility are fair, reasonable, and adequate under the circumstances.</u>

23. In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.,* 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds). The appropriateness of a proposed financing facility should also be considered in light of current market conditions. *See Transcript of Record at 740:4–6, In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 27, 2009) ("[B]y reason of present market conditions, as disappointing as the [debtor-in-possession financing] pricing terms are, I find the provisions [of the financing] reasonable here and now.").

24. Here, the terms of the DIP Facility set forth in the DIP Credit Agreement and Proposed Orders are fair, appropriate, reasonable, and adequate under the circumstances, and in

the best interests of the Debtor, its estate and its creditors. As set forth in the First Day Declarations, the covenants and milestones included in the Proposed Orders are reasonable and are not designed to make the Debtor disproportionately susceptible to a breach of such terms. All terms regarding the DIP Facility were extensively negotiated by the Debtor and their advisors to ensure that the terms were as favorable to the Debtor as possible under the circumstances, and the Debtor believes that such terms represent fair consideration for the critical financing proposed to be provided by Firelands. Accordingly, the Debtor submits that the terms of the DIP Facility are fair, appropriate, reasonable, and adequate under the circumstances, and in the best interests of the Debtor, its estate and its creditors.

## II.   The DIP Lender Should Be Afforded Good Faith Protection Under Section 364(e) of the Bankruptcy Code.

25.   Section 362(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. 11 U.S.C. § 364(e). Section 364(e) of the Bankruptcy Code provides as follows:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

*Id.*

26.   As described in detail above, the DIP financing is the result of (a) the Debtor's reasonable and informed determination that the DIP Lender offers the most favorable terms on which to obtain vital postpetition financing and (b) extensive arm's-length, good faith negotiations between the Debtors and the DIP Lender. The Debtor submits that the terms and conditions of the

19

DIP Facility, as set forth in the DIP Loan Documents and Proposed Orders, are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Accordingly, the Court should find that the DIP financing has been extended by the DIP Lender in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and, therefore, the DIP Lender is entitled to the protections afforded thereby.

### III. The Debtor Should Be Authorized to Use the Cash Collateral

27. The Debtor should be permitted to use Cash Collateral pursuant to section 363(c)(2) of the Bankruptcy Code, which provides, in relevant part, that a debtor "may not use, sell, or lease cash collateral . . . unless: (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." *Id.* at § 363(e).

28. The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection, specifically including replacement liens. *See* 11 U.S.C. § 361. Section 361(3) of the Bankruptcy Code goes on to provide the flexible concept that adequate protection may also take other forms, so long as the relief "will result in the realization by [creditor] of the indubitable equivalent of such [creditor's] interest in [cash collateral]." *See* 11 U.S.C. § 361.

29. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See, e.g., Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp.,*

*Inc.),* 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp,* No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.,* Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.,* 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (internal citation omitted).

30.     In *Swedeland,* the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.,* 16 F.3d at 564 (quoting *In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.),*

31.     The Debtor proposes to provide a variety of adequate protection—including, the Adequate Protection Liens, Adequate Protection Superpriority Claims, and Adequate Protection Payments—to protect the interests of the Prepetition Secured Parties in the Debtor's property from any diminution in value of the Accounts and Collateral resulting from the use of the Cash Collateral and the imposition of automatic stay (the "Adequate Protection").

## IV.     The Scope of the Proposed Carve-Out is Reasonable and Appropriate

32.     The DIP Facility and Interim Order subject the security interests and administrative expense claims under the DIP Facility to the Carve-Out. Without the Carve-Out, the Debtor and other parties in interest may be deprived of certain rights and powers because the services for

which professionals may be paid in these Chapter 11 Cases would be restricted. *See, e.g., In re Ames Dep't Stores,* 115 B.R. at 38 (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers. Additionally, the Carve-Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for payment of the Clerk of the Court and the U.S. Trustee fees, the fees and costs of the Debtors' claims and noticing agent, KEIP obligations, and Professional Fees.

## V. The Automatic Stay Should Be Modified on a Limited Basis

33. The relief requested herein contemplates a modification of the automatic stay to (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claim; (b) permit the Debtor to incur all liabilities and obligations to the DIP Lender and Prepetition Lender under the Proposed Orders; (c) subject to the Carve Out, authorize the Debtor to pay, and the DIP Lender to retain and apply, payments made in accordance with the terms of the Proposed Orders; and (d) authorize the DIP Lender, subject to certain limitations in the Interim Order, to exercise remedies upon the occurrence and during the continuation of an event of default under the Interim Order. Stay modifications of this kind are ordinary and standard features for debtor in possession financing arrangements, and in the Debtor's business judgment, are reasonable and fair under the circumstances.

## VI. Interim Relief Should Be Granted

34. Bankruptcy Rule 4001 provides that a final hearing on a motion for authority to use cash collateral or obtain credit may not be commenced earlier than 14 days after the service of

such motion. Upon request, however, the court is authorized to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral or obtain DIP financing to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. *See* Fed. R. Bankr. P. 4001(b)(2) & 4001(c)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

35.     Pending the Final Hearing, the Debtor requires immediate access to Cash Collateral to satisfy the day-to-day needs of the Debtor's business operations. Access to liquidity will help to address any concerns of employees, vendors or residents regarding the Debtor's financial health and ability to continue operations in light of these Chapter 11 Cases. The Debtor has an immediate need for liquidity to, among other things, maintain business relationships with their vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtor's going concern value for the benefit of all parties in interest. In addition, the Budget establishes that the Debtor's use of Cash Collateral during this requested interim period will not prejudice the Prepetition Secured Parties.

36.     Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b) & (c), the Debtor requests an expedited hearing to consider the Motion and entry of the Interim Order.

### **Bankruptcy Rule 4001(a)(3) Should Be Waived**

37.     The Debtor requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order

granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). As explained above and in the First Day Declaration, access to the DIP Facility and use of Cash Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

38.     Bankruptcy Rule 6003 empowers the Court to issue an order, within the Interim Period, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an interim order granting this Motion is integral to the Debtor's ability to successfully transition into chapter 11 and to avoid disruptions to the Debtor's operations and potential penalties, to the detriment of the Debtor's estate and creditors. Accordingly, the Debtor submits that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(h)

39.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtor to preserve the value of their estates. Accordingly, the Debtor

respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**<u>Notice</u>**

40.     Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the Northern District of Ohio, Attn: Kate Bradley, U.S. Department of Justice, Office of the U.S. Trustee, 201 Superior Avenue E, #441, Cleveland, Ohio 44115 ([kate.m.bradley@usdoj.gov](mailto:kate.m.bradley@usdoj.gov)); (ii) the United States Attorney for the Northern District of Ohio; (iii) the offices of the attorneys general for the states in which the Debtors operate; (iv) the Internal Revenue Service; (v) the Taxing Authorities; (vi) the Debtors' 20 largest unsecured creditors on a consolidated basis; (vii) proposed counsel to the Debtors, Richard K. Stovall, Allen, Stovall, Neuman & Ashton LLP, 10 W. Broad Street, Suite 2400, Columbus, Ohio 43215 (stovall@asnalaw.com); (viii) counsel to the DIP Lender/Firelands, Ellen Arvin Kennedy, Dinsmore, 250 W. Main Street, Lexington, Kentucky 40507 (ellen.kennedy@dinsmore.com); (ix) counsel to the Master Trustee, Patricia Fugee, FisherBroyles, LLP, 27100 Oakmead Drive, Box 306, Perrysburg, Ohio 43551 (patricia.fugee@fisherbroyles.com); (x) counsel to Fifth Third, Kari Balog Coniglio, Vorys, Sater, Seymour and Pease LLP, 200 Public Square, Suite 1400, Cleveland, Ohio 44114 (kbconiglio@vorys.com); (xi) the First National Bank of Bellevue; (xii) any statutory committee appointed in this case; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

**Conclusion**

WHEREFORE, the Debtor respectfully requests the entry of the proposed Interim and Final Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: February 5, 2025          Respectfully submitted,

   /s/ Richard K. Stovall
Thomas R. Allen     (0017513)
Richard K. Stovall    (0029978)
James A. Coutinho    (0082430)
Andrew D. Rebholz  (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
allen@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Proposed Counsel for Debtor*

25-30191-maw   Doc 34   FILED 02/05/25   ENTERED 02/05/25 17:55:10   Page 26 of 70

# EXHIBIT A

# Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 25-30191 |
| The Bellevue Hospital, | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Mary Ann Whipple |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN
POST-PETITION SECURED FINANCING; (II) AUTHORIZING THE
DEBTOR'S USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE
PROTECTION TO THE PREPETITION SECURED PARTIES; (IV) SCHEDULING
A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

This matter is before the Court upon the Motion ("Motion")[1] [Doc. ___] of The Bellevue Hospital (the "Debtor") for entry of an interim order (this "Interim Order") and a final order (the "Final DIP Order"), pursuant to sections 105, 361, 362, 363, 364(c), 364(e), and 507(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), among other things:

---

[1] Capitalized terms not otherwise defined in this DIP Order shall have the meanings ascribed to them in the Motion.

(i)      upon entry of a Final Order, authorizing the Debtor to obtain post-petition financing on the terms described in the Motion, including, without limitation, a revolving credit facility (the "DIP Facility," and advances thereunder, the "Facility Draws") for up to $1,500,000.00 on a final basis (collectively, the "DIP Obligations"), pursuant to the terms of a post-petition Credit Agreement, Revolving Note, Security Agreement and Open-End Mortgage, Security Agreement and Fixture Filing, and related and ancillary documents as between the Debtor and Firelands Regional Health System (in its capacity as post-petition lender, the "DIP Lender") dated as of February [__], 2025 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of the DIP Order (collectively, the "DIP Facility Loan Documents");

(ii)     upon entry of a Final Order, granting to the DIP Lender automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), which liens shall be on the terms and subject to the relative priorities set forth in this Interim Order, subject to the Carve-Out (as defined herein), the Prepetition Senior Secured Creditor Liens (as defined herein), and the Senior Secured Creditor's Adequate Protection Liens (as defined herein);

(iii)    authorizing the Debtor to use Cash Collateral (as defined herein) which is subject to a first priority lien and security interest in favor of The Bank of New York Mellon Trust Company, N.A., in its capacity as Master Trustee (the "Master Trustee") for the benefit of Fifth Third Bank, National Association ("Fifth Third" and together with Master Trustee, the "Senior Secured Creditor");

(iv)     granting adequate protection to the Senior Secured Creditor with respect to the Debtor's use of the Senior Secured Creditor's Cash Collateral;

25-30191-maw    Doc 34    FILED 02/05/25    ENTERED 02/05/25 17:55:10    Page 28 of 70

(v)     modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor, the DIP Lender, and/or the Senior Secured Creditor to implement and effectuate the terms and provisions of the DIP Facility Loan Documents and this Interim Order;

(vi)     subject to entry of the Final Order, waiving (y) the Debtor's ability to surcharge against the Prepetition Collateral (as defined below), the DIP Collateral and/or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law and (z) the applicability of the "equities of the case" exception under 552(b) of the Bankruptcy Code;

(vii)     scheduling a final hearing ("Final Hearing") to consider entry of the Final Order within twenty-eight (28) days of the Petition Date;

(viii)     waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(ix)     granting related relief.

This Court, having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and appropriate notice of the Motion under the circumstances having been given and such notice having been good and sufficient; and the Court having conducted a hearing (the "Interim Hearing") for interim relief on the Motion; and the Court having reviewed the Motion, the *Declaration of Sarah Brokaw in Support of First Day Motions of Debtor and Debtor-in-Possession* (the "Brokaw Declaration") and the *Declaration of Darrell Lentz* (the "Lentz Declaration" and together with the

3

Brokaw Declaration, the "<u>First Day Declaration</u>") filed contemporaneously with the Motion, the other evidence adduced by the parties, the representations of counsel, and the entire record made at the Interim Hearing; and the relief granted herein being reasonable, appropriate and in the best interests of the Debtor, and its creditors, its estate and all other parties in interest in this Chapter 11 Case; and the Court having determined that the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS[2]:**

A.      *Disposition*. The relief requested in the Motion is hereby granted on an interim basis on the terms set forth below. Any objections to the Motion and the entry of this Interim Order to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied, and overruled on the merits in their entirety. This Interim Order shall become effective immediately upon its entry.

B.      *Notice*. In accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and the Local Rules of this Court (the "<u>Local Rules</u>"), notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by electronic mail, facsimile, overnight courier or hand delivery to certain parties-in-interest, including: (i) the Senior Secured Creditor, (ii) the DIP Lender, (iii) First National Bank of Bellevue, (iv) the Office of the United States Trustee; (v) the twenty largest unsecured creditors; (vi) the Debtor's members; and (vii) all parties requesting notices in this case. Under the circumstances, the notice given by

---

[2] This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Petition Date.

4

the Debtor of the Motion, the relief requested therein, and the Interim Hearing complies with the applicable Bankruptcy Rules and Local Rules.

C. *Debtor's Stipulations*. Subject to Paragraph 14 of this Interim Order and the rights of the parties-in-interest set forth therein, the Debtor admits, stipulates, and agrees that:

    1. <u>Senior Secured Creditor Obligations</u>.

        a. Debtor is indebted to Senior Secured Creditor pursuant to, among other things: (i) that certain Master Trust Indenture, dated as of July 1, 2003, by and between Master Trustee (as successor in trust to Fifth Third) and Debtor who is the sole Obligated Issuer thereunder and sole member of the Obligated Group bound thereby, as supplemented, amended or otherwise modified from time to time (as amended, supplemented or otherwise modified from time to time, the "<u>Indenture</u>" and together with all documents securing, evidencing, guarantying, governing, and otherwise relating to the Indenture and the Senior Secured Creditor Prepetition Obligations (defined herein), the "<u>Senior Secured Creditor Loan Documents</u>"); and (ii) certain Obligations issued under and made pursuant to the Indenture, including: (w) Obligation No. 6, dated as of August 28, 2012, made by Debtor to Fifth Third in the original principal amount of $10,000,000, (x) Obligation No. 7, dated as of September 12, 2012, made by Debtor to Fifth Third in the original principal amount of $8,500,000, (y) Obligation No. 8, dated as of October 3, 2012, made by Debtor to Fifth Third in the original principal amount of $2,569,152.82, and (z) Obligation No. 9, dated as of November 30, 2017, made by Debtor to Fifth Third in the original principal amount of $9,000,000 (collectively with all other amount owed by Debtor and its affiliates and subsidiaries to Fifth Third, the "<u>Senior Secured Creditor Prepetition Obligations</u>");

        b. the Senior Secured Creditor Prepetition Obligations are secured by (i) validly perfected, unavoidable, first-priority mortgage liens on certain of Debtor's real estate,

including the hospital facilities located at 1400 West Main Street, Bellevue, Ohio 44811, and an office building located at 102 Commerce Park Drive, Bellevue, Ohio 44811 (together, the "Prepetition Senior Secured Creditor Real Estate Collateral"); and (ii) validly perfected, unavoidable, first priority liens and security interests in substantially all of Debtor's tangible and intangible personal property (collectively, the "Prepetition Senior Secured Creditor Personal Property Collateral" and together with the Prepetition Real Estate Collateral, the "Prepetition Senior Secured Creditor Collateral"), including all of Debtor's accounts, accounts receivables, cash, and cash equivalents, including Employee Retention Credit refunds, and federal grants and all proceeds of the foregoing (collectively, the "Cash Collateral") (collectively, the "Prepetition Senior Secured Creditor Liens and Security Interests"), each of which are more fully described in the applicable Prepetition Senior Secured Creditor Loan Documents;

        c.     As of the Petition Date, the outstanding principal balance of the Senior Secured Creditor Prepetition Obligations for which the Debtor is indebted was $17,331,975.54, exclusive of accrued and unpaid interest, fees, costs and expenses (including attorneys', accountants', appraisers' and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Indenture or any other loan document relating to the Senior Secured Creditor Prepetition Obligations);

        2.     <u>Firelands Prepetition Obligations</u>. Debtor is indebted to Firelands Regional Health System (in its capacity as prepetition lender, "Firelands", and together with the Senior Secured Creditor, the "Prepetition Secured Parties") pursuant to the terms of a Promissory Note (Non-Revolving Credit) (the "Firelands Note" and together with all other documents securing, evidencing, guarantying or governing the Prepetition Firelands Obligations (defined herein), the "Firelands Prepetition Loan Documents" and together with the Senior Secured Creditor Loan

Documents, the "<u>Prepetition Loan Documents</u>"), in the amount of $800,000 (the "<u>Prepetition Firelands Obligations</u>" and together with the Senior Secured Creditor Prepetition Obligations, the "<u>Prepetition Obligations</u>"). The Prepetition Firelands Obligations are secured by a valid and enforceable, first priority pledge and security interest in: (i) twenty-five (25) units in The Firelands-Bellevue Real Estate Holding Company, LLC and (ii) twenty-five (25) units in The Firelands Bellevue Urgent Care Operating Company, LLC (together, the "<u>Prepetition Firelands Collateral</u>" and together with the Prepetition Senior Secured Creditor Collateral, the "<u>Prepetition Collateral</u>") (the "<u>Prepetition Firelands Liens and Security Interests</u>" and together with the Prepetition Senior Secured Creditor Liens and Security Interests, the "<u>Prepetition Liens and Security Interests</u>");

3.     The Prepetition Obligations constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Loan Documents, all of which are deemed to be reaffirmed by the parties thereto;

4.     No offsets, reductions, defenses, claims, or counterclaims to the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or any other claim, cause of action or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

5.     The Debtor does not have, and hereby absolutely, unconditionally, and irrevocably releases, remises, waives and discharges and is forever barred from bringing or asserting any claims, counterclaims, causes of action, defenses, or setoff rights relating to the Prepetition Loan Documents, the Prepetition Liens and Security Interests, or the Prepetition Obligations against the Prepetition Secured Parties and their respective successors and assigns, and their present and former shareholders, members, managers, partners, affiliates, subsidiaries,

7

divisions, predecessors, directors, officers, attorneys, advisors, principals, employees, consultants, agents, legal representatives and other representatives. For the avoidance of doubt, the Debtor forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), controversies, disputes, liabilities, obligations, demands, expenses (including, without limitation, attorneys' fees), debts, liens, actions, counterclaims, causes of action, defenses or setoff and/or recoupment rights against the Prepetition Secured Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other provisions of applicable state or federal law.

6.      Senior Secured Creditor does not control the Debtor or its properties or operations, does not have authority to determine the manner in which any of the Debtor's operations are conducted (except to the extent expressly set forth in the Prepetition Loan Documents), and is not a control person or insider of the Debtor by virtue of any of the actions taken with respect to, in connection with, relating to or arising from any of the Prepetition Loan Documents.

D.	*Findings Regarding Post-Petition Borrowings and Use of Cash Collateral.*

1.	Good and sufficient cause has been shown for entry of this Interim Order.

2.	The Debtor has an immediate needs to use Senior Secured Creditor's Cash Collateral and to borrow from the DIP Facility as provided herein, in order to permit, among other things, the orderly continuation of the operation of the Debtor's business, including continued patient care, to maintain business relationships with employees, vendors, suppliers, and patients, to make payroll, to make ordinary capital expenditures, and to provide for other working capital and operational needs, to preserve Debtor's assets for the benefit of its creditors and its estate, to avoid immediate and irreparable harm to the Debtor's bankruptcy estate, and to minimize disruption to and avoid the termination of its business operations. Entry of this Interim Order will also enhance the possibility of maximizing the value of the Debtor's business in connection with a chapter 11 plan of reorganization

3.	Senior Secured Creditor has consented to Debtor's use of its Cash Collateral subject to the terms of this Interim Order. Senior Secured Creditor's consent to entry of this Interim Order shall not constitute (nor shall such consent be implied from any other action, inaction, or acquiescence by Senior Secured Creditor) to the charging of any costs or expenses of administration of this Chapter 11 Case (or any future proceeding that may result therefrom), against, or the recovery from, the Prepetition Senior Secured Creditor Collateral, including the Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of Senior Secured Creditor.

4.	The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code sections 364(b) and 503(b)(1) sufficient to finance the operation of its business. The Debtor is unable to obtain credit allowable under Bankruptcy Code sections 364(c)(1), (c)(2), or (c)(3) on

9

terms more favorable than those offered by the DIP Lender. An immediate need exists for the Debtor to obtain proceeds of the DIP Facility in order to continue operations, order critical supplies and equipment, and to administer and preserve the value of its bankruptcy estate as set forth in the Budget (defined herein). The Debtor, as of the Petition Date, does not have sufficient cash resources to finance its ongoing operations and requires the availability of working capital borrowed from the DIP Facility and from the use of the Cash Collateral of the Senior Secured Creditor, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, and all other stakeholders.

5.      The terms of the DIP Facility have been negotiated at arm's length, the DIP Facility is being extended in good faith, as that term is used in Bankruptcy Code section 364(e) and the DIP Lender is entitled to the benefits of the provisions such section.

6.      The terms and conditions of the DIP Facility Loan Documents are fair and reasonable, the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

7.      The Senior Secured Creditor is entitled to adequate protection as set forth herein pursuant to Bankruptcy Code sections 361, 362, 363, and 364 solely to the extent of any diminution in the value of its interests in the Prepetition Senior Secured Creditor Collateral from and after the Petition Date.

8.      Under the circumstances of this Chapter 11 Case, this Interim Order is a fair and reasonable response to Debtor's request to use the Cash Collateral and to obtain new credit provided by the DIP Facility, and the entry of this Interim Order is in the best interests of the Debtor's bankruptcy estate, its creditors, and all other parties in interest.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.  *Motion Granted.* The Motion is granted, to the extent any interim financing under the DIP Facility as may be required under the Budget (defined herein) as set forth in this Interim Order is authorized and approved, and the Debtor's use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order and the DIP Facility Loan Documents.

2.  *Authorization to Enter Into The DIP Facility and Incur Indebtedness Thereunder.* The DIP Facility is hereby approved as set forth herein. The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Facility Loan Documents, and to incur and to perform the obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Facility Loan Documents. Upon execution and delivery thereof, the DIP Facility Loan Documents shall constitute valid and binding obligations of the Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the DIP Facility Loan Documents, and this Interim Order, this Interim Order shall govern and control

3.  *Authorization to Borrower.* Upon entry of a Final Order and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Facility Loan Documents and the Final Order , the Debtor is hereby authorized to request, and the DIP Lender is hereby authorized to make, a new money loan in an amount not to exceed the Facility Draws reflected in the Budget for such period (the "DIP Advances"), the proceeds of which shall be used in accordance with the DIP Facility Loan Documents and the Budget (defined below). DIP Advances shall be made only as needed and in accordance with the Budget (*i.e.*, they may not be

11

drawn in a lump sum). For the avoidance of doubt, no DIP Advances will be made until the entry of a Final Order.

4.     *DIP Obligations*. The DIP Facility Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtor, its estate and any successors thereto, including any trustee appointed in the Chapter 11 Case, or in a case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Case"). Upon entry of the Final Order, the DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Lender under, or secured by, the DIP Facility Loan Documents or the Final Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Facility Loan Documents. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease upon the occurrence of a Termination Event (as defined herein). Subject to entry of the Final Order, no obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Facility Loan Documents (including any DIP Obligations or DIP Liens, and including in connection with any adequate protection provided hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise),

12

counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    *DIP Liens*. In order to secure the DIP Obligations, effective immediately upon entry of the Final Order, and subject to the priorities set forth in Paragraph 6 herein, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all real and personal property and other assets, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtor and its bankruptcy estate (collectively, the "<u>DIP Collateral</u>"); *provided however*, that for the avoidance of all doubt, the DIP Collateral shall not include any claims or causes of action under chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or state law of the Debtor and its estates (the "<u>Avoidance Actions</u>").

6.    *DIP Lien Priority.* The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to (a) the Carve Out, (b) the first-priority liens and security interests of the Senior Secured Creditor in the Prepetition Senior Secured Creditor Collateral, and (c) the Senior Secured Creditor's Adequate Protection Liens (as defined herein), as set forth in this Interim Order. The DIP Liens shall consist of and be protected by the provisions of this Interim Order, including the following:

(i)    <u>Unencumbered Real Property</u>. Pursuant to Section 364(c)(2) of the Bankruptcy Code, the DIP Liens are valid, binding, continuing, enforceable, and fully perfected, first-priority security interests and liens upon all prepetition and post-petition unencumbered real

13

property of the Debtor, that, on or as of the Petition Date was not subject to a properly perfected, valid, enforceable and unavoidable lien securing repayment of the Senior Secured Creditor Prepetition Obligations. Specifically, the Debtor will grant the DIP Lender an Open End Mortgage, Security Agreement, and Fixture Filing and an Assignment of Leases and Rents on the following parcels of real property in Bellevue Ohio: (a) 2022 County Road 302; (b) 1424 W. Main Street; (c) 1005 W. McPherson Highway; (d) 200 Great Lake Parkway; County Road; (e) 101, 109, 117, 125, and 133 Commerce Park Drive; (f) two parcels of property on Progress Drive, and (g) a parcel of property on Auxiliary Drive.

(ii)     <u>DIP Liens Junior to Prepetition Senior Secured Creditor Liens and Security Interests</u>. The DIP Liens are valid, binding, continuing, enforceable, and fully perfected, second-priority security interests and liens upon all Prepetition Secured Creditor Real Estate Collateral, the Prepetition Secured Creditor Personal Property Collateral, and all Cash Collateral subject to the Senior Secured Creditor's Adequate Protection Liens.

(iii)     <u>DIP Liens Not Subordinate</u>. Other than as set forth herein (including with respect to the Carve-Out, the Prepetition Senior Secured Creditor Liens and Security Interests, and the Senior Secured Creditor Adequate Protection Liens), the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee or other estate representative appointed in this Chapter 11 Case or any Successor Case, and/or upon the dismissal of the Chapter 11 Case or Successor Case. The DIP Liens shall not be subject to Sections 506(c) (subject to entry of a Final Order), 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

14

7.      *DIP Superpriority Claims*. In addition to the DIP Liens granted herein, effective immediately upon entry of the DIP Order, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve Out, over all administrative expense claims, adequate protection and other diminution claims, unsecured claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtor, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof after satisfaction of any liens thereon. Other than as provided in the DIP Facility Loan Documents and this Interim Order with respect to the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

8.      *No Obligation to Extend Credit*. The DIP Lender shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Facility Loan Documents, unless all of the conditions precedent to the

15

making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Facility Loan Documents and the Final Order have been satisfied in full or waived by the DIP Lender.

9. *Use of Proceeds of DIP Facility*. From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as are permitted under the Final Order), only for the purposes specifically set forth in the Final Order and the DIP Facility Loan Documents, and in compliance with the terms and conditions in the Final Order and the DIP Facility Loan Documents.

10. *Authorization to Use Cash Collateral*. From entry of this Interim Order through and including the earlier to occur of (i) February 28, 2025, or (ii) the Termination Date, the Debtor is authorized to use Cash Collateral as set forth in this Interim Order, subject to the terms and conditions of this Interim Order and solely in accordance with the Budget (defined herein), and further subject to variances other than a Prohibited Variance (as defined herein). The Debtor shall be enjoined and prohibited from at any time using the Cash Collateral for any purpose not expressly set forth in this Interim Order absent further order of this Court. Fifth Third shall continue to hold the Pledged Funds (as defined in the Motion) in a separately designated and blocked collateral account from which Cash Collateral may be released no more than once per week to the Debtor in accordance with the Budget and requests of the Debtor on no less than two (2) business days' notice.

11. *Continuation of Credit Card and Blocked Collateral Account*. From entry of this Interim Order through and including the earlier to occur of (i) February 28, 2025, or (ii) the Termination Date, the Debtor is authorized to continue to use its credit card line of credit with Fifth Third (the "Credit Card"), up to an aggregate outstanding balance of $150,000, subject to the

16

terms and conditions governing such agreement prior to the Petition Date. Debtor shall maintain funds equal to $150,000 on deposit with Fifth Third in a blocked collateral account (the "Credit Card Security Account"), which funds shall secure the immediate repayment of the Debtor's post-petition obligations on the Credit Card. At all times, whether there has been an Event of Default or Termination Event (each as defined below) or not, Fifth Third shall be entitled to offset the funds on deposit in the Credit Card Security Account and apply the same towards satisfaction of Debtor's Credit Card obligations at that time. If the funds in the Credit Card Security Account are less than $150,000, Fifth Third shall, at its election in its sole discretion, reduce the availability on the Credit Card to the amount on deposit in the Credit Card Security Account or may terminate the Debtor's authorization to use the Credit Card without notice.

      12.    *Adequate Protection for the Senior Secured Creditor.* Pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, Senior Secured Creditor is entitled to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Senior Secured Creditor's interest in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code (such diminution in value, the "Adequate Protection Amount"). As adequate protection for the Adequate Protection Amount, and solely to the extent of same, the Senior Secured Creditor is hereby granted the following (collectively, the "Adequate Protection Obligations"):

          (i)    Adequate Protection Liens. Subject only to the terms of this Interim Order, pursuant to sections 361 and 363(e) of the Bankruptcy Code and in consideration of the stipulations and consents set forth herein, the Debtor hereby grants to the Senior Secured Creditor, solely to the extent of any diminution in value of the Prepetition Senior Secured Creditor Collateral, valid,

17

binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date: (x) valid, binding, continuing, enforceable, and fully perfected replacement liens on and security interests in the post-petition property of the Debtor of the same priority, extent and amount as the Senior Secured Creditor's prepetition interest in the Prepetition Collateral, together with any proceeds, products or profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (the "Replacement Liens"), (y) valid, binding, continuing, enforceable, and fully perfected second priority liens on the DIP Collateral, junior to the DIP Liens (the "Subordinated Adequate Protection Liens"); and (z) valid, binding, continuing, enforceable, and fully perfected first-priority liens on all Avoidance Actions, including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise (the "Avoidance Actions Liens" and together with the Replacement Liens, and the Subordinated Adequate Protection Liens, the "Adequate Protection Liens" and the property subject thereto, the "Adequate Protection Collateral"). Except with respect to the Subordinated Adequate Protection Liens which are expressly subordinated to the DIP Liens, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code, or (b) any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order, including with respect to the DIP Liens.

(ii)     Adequate Protection Superpriority Claims. Senior Secured Creditor is hereby granted, subject only to the Carve-Out and junior only to the DIP Superpriority Claim, allowed superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") as provided for in section 507(b) of the Bankruptcy Code, payable from and having

18

recourse to all prepetition and post-petition property of the Debtor after satisfaction of any liens therein. Subject only to the Carve-Out and the DIP Superpriority Claims, and except as provided below, the Adequate Protection Super-priority Claims shall have priority over any and all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtor or its estate in any Successor Case, at any time existing or arising, of any kind or nature whatsoever. Other than the Carve-Out and the DIP Superpriority Claims, no cost or expense of administration of the Chapter 11 Case shall be senior to, or *pari passu* with, the Adequate Protection Superpriority Claims.

(iii)   <u>Adequate Protection Payments</u>. The Senior Secured Creditor shall, as set forth below, receive from the Debtor (collectively, "<u>Adequate Protection Payments</u>") payment of all outstanding interest then due on the Senior Secured Creditor Prepetition Obligations in cash and in immediately available funds, as and when such payments would have come due under the Prepetition Senior Secured Creditor Loan Documents had the Chapter 11 Case not been commenced, which shall accrue and be payable at the applicable interest rate set forth, and at the times provided for, in the Prepetition Senior Secured Creditor Loan Documents.

(iv)   <u>Reporting</u>. The Debtor shall cooperate with, and to the extent appropriate, comply with all reporting requirements set forth in the Prepetition Senior Secured Creditor Loan Documents. In addition, the Debtor shall provide such additional reporting as the Senior Secured Creditor shall reasonably require.

(v)     In addition to, and without limiting, whatever rights to access the Senior Secured Creditor has under the Prepetition Senior Secured Creditor Loan Documents, the Debtor shall permit representatives, agents, and employees of the Senior Secured Creditor to have reasonable access to: (a) inspect the Debtor's assets and properties during normal business hours; (b) examine the Debtor's books and records; and (c) discuss the Debtor's affairs, finances, and condition with the Debtor's officers, management, financial advisors, attorneys and consultants, provided, however, that the Debtor shall not be required to disclose to the Senior Secured Creditor information protected by the work product doctrine, the attorney-client privilege or any similar privileges.

13.     *Adequate Protection for Other Prepetition Secured Creditors*. To the extent any party in interest holds a valid, enforceable and properly perfected security interest and liens in property of the Debtor, other than the Prepetition Secured Parties (collectively, the "Other Prepetition Secured Parties"), such Other Prepetition Secured Parties are granted valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, replacement liens on and security interests in (the "Other Prepetition Secured Parties Adequate Protection Liens") the post-petition property of the Debtor of the same type and nature, and with the same priority, to the same extent and in the same amount that such Other Prepetition Secured Parties' interests in the same property of the Debtor (the "Other Prepetition Secured Parties' Collateral"), together with any proceeds, products or profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (the "Other Prepetition Secured Parties Adequate Protection Collateral"), solely to the extent of any actual decrease in the value of such interests in the Other Prepetition Secured Parties' Collateral. The Other Prepetition Secured Parties Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (a) any

20

lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code, or (b) any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order. The Other Prepetition Secured Parties are further granted, solely to the extent of any actual decrease in the value of such interests in the Other Prepetition Secured Parties' Collateral, allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case which, subject to the Carve Out, shall be junior only to the superpriority administrative expense claims of the DIP Lender and the Adequate Protection Superpriority Claims of the Senior Secured Creditor (the "Other Secured Parties' Adequate Protection Superpriority Claim").

14. *Effect of Stipulations on Third Parties*.

(i) <u>Generally</u>. The Debtor's Stipulations are set forth in Paragraph C above, which stipulations and admissions are and shall be binding upon the Debtor and any successors thereto in all circumstances. The stipulations and admissions contained in this Interim Order, including without limitation, the Debtor's Stipulations, shall also be binding upon the Debtor's estate and all other parties in interest, including the Committee (if any) or any Chapter 7 or Chapter 11 trustee appointed or elected for the Debtor (a "<u>Trustee</u>"), for all purposes unless (a) the Committee or any other party in interest, no later than the date that is sixty (60) days from entry of this Interim Order (the "<u>Challenge Period</u>"), has properly filed an adversary proceeding as required under the Bankruptcy Rules (y) challenging the amount, validity, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens and Security Interests on the Prepetition Collateral securing the Prepetition Obligations, or (z) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties on behalf of the Debtor's estate ((y) and (z), collectively, referred to herein as

21

"Challenges"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; provided, that, as to the Debtor, all such Challenge(s) are hereby irrevocably waived and relinquished effective as of the Petition Date.

      (ii)    <u>Binding Effect</u>. If no such Challenge is timely filed prior to the expiration of the Challenge Period, without further order of the Court: (a) the Debtor's Stipulations, admissions and releases contained in this Interim Order (including the stipulations contained herein and the releases set forth in Paragraph 14 below) shall be binding on all parties in interest, including the Debtor's estate, the Committee (if any), and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (b) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this Chapter 11 Case and any Successor Case; (c) the Prepetition Liens and Security Interests shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, and with the priority specified in the Debtor's Stipulations, and not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (d) each of the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period). If any Challenge is timely and properly filed prior to the expiration of the Challenge Period, the releases, stipulations and admissions contained in this Interim Order, including without limitation, in the Debtor's

22

Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person, including any Trustee appointed in any Successor Case, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise. The Debtor's Stipulations shall be binding upon the Debtor, its estate, all parties in interest in the Chapter 11 Case and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Chapter 11 Case or any Successor Case and shall inure to the benefit of the Prepetition Secured Parties, the Debtors, and their respective successors and assigns.

(iii)    No Standing. Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtor and/or its bankruptcy estate, including, without limitation, any Challenge(s) with respect to the Prepetition Loan Documents or the Prepetition Obligations.

15.    *Debtor's Waivers and Releases.*

(i)    Section 506(c) Claims and 552(b) Equities. Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any Successor Case at any time shall be charged against the DIP Lender, the Prepetition Secured Parties, their respective claims, the Prepetition Collateral, the DIP Collateral or the Adequate Protection Collateral, including Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender and/or the applicable Prepetition Secured Party, respectively. Subject to entry of the Final Order, the DIP Lender and the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b)

23

of the Bankruptcy Code, and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the DIP Lender and/or the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral, the DIP Collateral and/or the Adequate Protection Collateral.

(ii)     <u>Release of Prepetition Secured Parties</u>. In consideration of and as a condition to the Senior Secured Creditor's consent to the use of Cash Collateral and providing other financial accommodations to the Debtor pursuant to the provisions of this Interim Order, the Debtor, on behalf of itself, and its respective successors and assigns and the Debtor's estate (collectively, "<u>Releasors</u>"), subject only to Paragraph 14 above, hereby absolutely releases and forever discharges and acquits (i) the Senior Secured Creditor, (ii) the respective successors, participants, assigns directors, officers, attorneys, employees, financial advisors, consultants and other representatives of the Senior Secured Creditor, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of the Senior Secured Creditor (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "<u>Releasees</u>") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "<u>Prepetition Released Claim</u>" and collectively, the "<u>Prepetition Released Claims</u>") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, include, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against the Releasees for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may

24

have arisen at any time on or prior to the date of this Interim Order, in respect of the Debtor, the Senior Secured Creditor Prepetition Obligations and the Prepetition Senior Secured Creditor Loan Documents; *provided*, that such release shall be effective with respect to the Debtor upon entry of this Interim Order, and shall not be effective with respect to the Debtor's estates until the expiration of the Challenge Period.

(iii) <u>Release of DIP Lender</u>. Upon entry of the Final Order, in consideration of and as a condition to the DIP Lender providing the DIP Facility and the DIP Lender's providing other financial accommodations to the Debtor pursuant to the provisions of this Interim Order, the Final Order, and the DIP Facility Loan Documents, each of the Releasors hereby absolutely releases and forever discharges and acquits (i) the DIP Lender, (ii) the respective successors, participants, assigns, directors, officers, attorneys, employees, financial advisors, consultants and other representatives of the DIP Lender, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of the DIP Lender (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "<u>DIP Lender Releasees</u>") of and from any and all Prepetition Released Claims of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, include, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against the DIP Lender Releasees for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Interim Order, including, without limitation, in respect of the Prepetition DIP Lender Obligations; *provided*, that such release shall be effective with respect to the Debtor upon entry of

this Interim Order, and shall not be effective with respect to the Debtor's estates until the expiration of the Challenge Period.

16. *Budget, Reporting, and Covenants.*

(i) Budget. Attached hereto as **Exhibit A** is a 13-week cash flow budget (the "Budget") which reflects on a line-item basis the Debtor's (i) weekly projected cash receipts, and (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Chapter 11 Case, capital expenditures, asset sales, including the fees relating thereto, and budgeted fees and expenses of the DIP Lender, and any other fees and expenses relating to the DIP Facility. Unless and until the DIP Lender and Senior Secured Creditor has approved an updated budget in writing, on no less than two (2) business days' notice of a request for such amendment, the Debtor shall remain subject to and be governed by the terms of the Budget, and the DIP Lender shall not, as applicable, have any obligation to fund to any updated and otherwise unapproved budget, nor will the Debtor be authorized to use the Senior Secured Creditor's Cash Collateral for amounts contained in such budget to the extent they are in addition to or exceed amounts set forth in the Initial Budget. To the extent the DIP Lender and Senior Secured Creditor approve any amendment to the Budget, such amended budget shall be filed with the Court together with a Notice indicating that such amended budget shall be substituted for the Budget attached hereto.

(ii) Variance Reporting. Commencing on Friday, February 14, 2025 and continuing on the last business day of every week thereafter, the Debtor shall provide to the DIP Lender, Senior Secured Creditor, and to any official Unsecured Creditor Committee ("Committee") should one be appointed: (x) a variance report/reconciliation report certified by the Chief Financial Officer (or some other appropriate officer) of the Debtor, in form acceptable to the

26

DIP Lender and Senior Secured Creditor, setting forth (A) the actual cash receipts, expenditures, disbursements, and the outstanding DIP Facility balance (if any) of the Debtor for such immediately preceding fiscal week (including any "stub week" that includes the Petition Date) cumulatively and on a line-item basis, and (B) the variance in dollar amounts of the actual expenditures, disbursements, and outstanding DIP Facility balance for each week and cumulatively from those budgeted amounts for the corresponding week and cumulatively as reflected in the Budget, and (y) a certificate signed by the Chief Financial Officer (or some other appropriate officer) of the Debtor, in form acceptable to the DIP Lender and the Senior Secured Creditor, certifying whether the Debtor is in full compliance with Budget and providing an explanation for any Prohibited Variance. As used herein, "Prohibited Variance" means the payment of any expenses that would cause the aggregate expenditures under the Budget for any weekly period to exceed the amount set forth in the Budget for such week by 10%. Any budgeted expenditures not paid in a particular budget period may be carried forward into a subsequent budget period.

17. *Carve-Out*. The Prepetition Liens and Security Interests, the DIP Liens, the Adequate Protection Liens, the Other Prepetition Secured Parties Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the Other Prepetition Secured Parties Adequate Protection Superpriority Claims shall be subject only to the right of payment of the following expenses (collectively, "Carve-Out"), to the extent provided herein:

(i)      upon entry of this Interim Order, statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

(ii)     the allowed fees and costs of the Debtor's claims and noticing agent, subject in all respects to the terms of the Interim Order and allowance of fees by the Bankruptcy Court;

27

(iii)    all obligations payable under any Court approved Key Employee Incentive Plan up to the amount set forth in the Budget;

(iv)    all unpaid fees and expenses incurred (the "Allowed Professional Fees") by persons or firms retained by the Debtor or any Committee on or after the Petition Date pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (each a "Professional" and collectively, the "Professionals") in a cumulative sum for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted for each such Professionals for such week in accordance with the Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered, subject in all respects to the terms of the Interim Order and the Budget; and

(v)    Allowed Professional Fees of Professionals in an aggregate amount not to exceed $50,000 incurred after delivery by the DIP Lender or the Senior Secured Creditor of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of an Event of Default to the Debtor, the Debtor's counsel, the U.S. Trustee, and counsel for any Committee (the "Carve-Out Trigger Notice"), to the extent allowed by this Court (the amounts set forth in this clause (iv) being the "Post Carve-Out Trigger Notice Cap," and the amounts set forth in clauses (i) through (iv) being the "Carve-Out Cap"). For the avoidance of doubt, to the extent the budgeted amounts for a Professional for any Budget period exceed the actual fees and expenses incurred by such Professional for that period, the excess may be carried forward to later Budget periods or backward to prior Budget periods to be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later periods.

18. *Excluded Professional Fees*. Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of the DIP Collateral, the Prepetition Collateral, the Adequate Protection Collateral or the DIP Facility shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Prepetition Obligations or the Prepetition Liens and Security Interests, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Obligations or the Prepetition Liens and Security Interests, or (iii) preventing, hindering or delaying the Prepetition Secured Parties' assertion or enforcement of any lien, claim, right, or security interest or realization upon any Prepetition Collateral and/or Adequate Protection Collateral, in accordance with the terms and conditions of this Interim Order, (b) a request to use the Cash Collateral on and after the Termination Date, except to the extent expressly permitted herein, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), other than from the Prepetition Secured Parties or the DIP Lender, without the prior written consent of the Prepetition Secured Parties and the DIP Lender, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Prepetition Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, financial advisors, consultants, affiliates, successors, or assigns, including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any recovery from the Prepetition Secured Parties under Chapter 5 of the Bankruptcy Code, (e) seeking to amend or modify any of the rights granted to the

29

DIP Lender under this Interim Order, the DIP Facility Loan Documents, or the Prepetition Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens and Security Interests, the Prepetition Obligations, the DIP Collateral, the Prepetition Collateral, or any other claims or liens, held by the DIP Lender or the Prepetition Secured Parties, (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against the DIP Lender, the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, managers, and employees, (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Liens, the DIP Obligations, the Prepetition Liens and Security Interests, the Prepetition Obligations, the DIP Collateral, the Prepetition Collateral or any other rights or interests of any of the DIP Lender or the Prepetition Secured Parties, or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; provided, however, that, subject to the Carve-Out Cap, an amount not to exceed $7,500 in the aggregate of Cash Collateral may be used to pay the Allowed Professional Fees of any Committee to investigate (but not prosecute) claims against and/or possible objections with respect to the Prepetition Secured Obligations, and the pre-petition liens and security interests of, the Prepetition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Prepetition Secured Parties). Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

19.     *Payment of Carve-Out*.

(i)     Each Professional shall maintain a segregated account for the payment of Allowed Professional Fees (each, a "<u>Carve-Out Reserve Account</u>"), which accounts shall be, respectively, funded from cash receipts or on behalf of the Debtor in accordance with the Budget on a weekly basis, in advance, until the occurrence of a Carve-Out Trigger Notice. After the Carve-Out Trigger Notice, each Carve-Out Reserve Account may continue to be funded, up to, in the aggregate, the Carve-Out Cap. From funds in their respective Carve-Out Reserve Account, each Professional shall pay their Allowed Professional Fees in compliance with any interim compensation procedures and in the manner set forth in this Interim Order in accordance with the Budget.

(ii)     The Carve-Out Cap shall be reduced on a dollar-for-dollar basis by the amounts actually funded into the Carve-Out Reserve Account and/or the amounts actually paid on account of the Carve-Out. To the extent that, as of the Carve-Out Trigger Notice, the Carve-Out Reserve Account has not been funded in accordance with the Budget, the DIP Lender and/or the Prepetition Secured Parties shall remit the difference to the Carve-Out Reserve Account solely from cash receipts. Payment of any amounts on account of the Carve-Out shall not be deemed to reduce the DIP Obligations or the Prepetition Secured Obligations, and shall not be deemed to subordinate the DIP Lender's or the Prepetition Secured Parties' respective liens and security interests in the DIP Collateral, the DIP Superpriority Claims, the Prepetition Collateral, the Adequate Protection Collateral or the Adequate Protection Superpriority Claims to any junior pre- or postpetition lien, interest, or claim in favor of any other party. The DIP Lender and the Prepetition Secured Parties shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in

31

connection with this Chapter 11 Case or Successor Cases under any chapter of the Bankruptcy Code, and nothing in this Paragraph 19 shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

20.     *Lien Perfection*. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or the Adequate Protection Liens or to entitle the DIP Liens or the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender and/or the Prepetition Secured Parties may, in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The DIP Lender and/or Prepetition Secured Parties may, in their sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

21.     *Termination.* The Debtor's authority to use Cash Collateral and the DIP Lender's obligation to advance funds under the DIP Facility pursuant to this Interim Order shall terminate without any further order of this Court or further action by the DIP Lender or the Senior Secured Creditor three (3) business days following the delivery of a written notice (a "Default Notice") by either DIP Lender or Senior Secured Creditor to counsel for the Senior Secured Creditor or DIP Lender (as applicable), counsel for the Debtor, counsel for the Committee (if any), and the U.S. Trustee (any such three (3) business-day period, the "Default Notice Period") of the occurrence of any of the events set forth in clauses (i) through, and including, (viii) below) without further notice or court proceeding upon the earliest to occur of any of the following (each, a "Termination Event" and the date upon which such Termination Event shall occur, the "Termination Date"):

(i)      either (a) the Chapter 11 Case is dismissed or (b) the Court enters an order converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

(ii)     either (a) the Court enters an order appointing a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1104(c) and 1106(a)(3) and (4) for the Debtor; or (b) the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(iii)    the Court suspends the Chapter 11 Case under § 305;

(iv)     the a filing by the Debtor of any motion, pleading, application or adversary proceeding challenging the (a) validity, extent, enforceability, perfection or priority of the DIP Liens, the Prepetition Liens and Security Interests, or the Adequate Protection Liens or asserting any other cause of action against and/or with respect to the Prepetition Loan Documents, the DIP Facility Loan Documents or any of the DIP Liens, Prepetition Liens and Security Interests, or the Adequate Protection Liens; or (ii) the validity or enforceability of any of the Prepetition

33

Obligations or the DIP Obligations (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(v) the consummation of any transaction resulting in the sale or disposition of all or substantially all of the assets of the Debtor and its estate which does not provide for the repayment in full in cash of all Prepetition Secured Obligations and DIP Obligations upon the consummation thereof (unless approved by the prior written consent of the Prepetition Secured Parties and the DIP Lender);

(vi) the Debtor's filing of a motion seeking any financing under section 364(d) of the Bankruptcy Code secured by the Prepetition Collateral, the DIP Collateral, and/or the Adequate Protection Collateral that does not require the payment in full of all Prepetition Secured Obligations and DIP Obligations;

(vii) this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender and Senior Secured Creditor;

(viii) the occurrence of any Event of Default (defined below) under the terms of this Interim Order which remains uncured for three (3) business days after the Debtor's receipt of written notice from the DIP Lender or Senior Secured Creditor through the parties' respective professionals of record.

22. *Default*. The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Interim Order (unless waived, amended or extended, as applicable, in writing by the DIP Lender and the Senior Secured Creditor):

(i) the Debtor fails to perform any of its material obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof, including

34

(a) the use of Cash Collateral other than as permitted herein and in the Budget; and (b) the failure to provide any report, document, or information to DIP Lender or Senior Secured Creditor as required herein;

(ii)     any representation or warranty made in any certificate, report, expense statement, other financial statement, or other document delivered to the DIP Lender or Senior Secured Creditor after the Petition Date proves to have been false in any material respect as of the time when made or given;

(iii)     any other person or entity obtains an order permitting the use of Cash Collateral without the written consent of the DIP Lender or Senior Secured Creditor;

(iv)     a Variance Report provided to DIP Lender or Senior Secured Creditor shows a Prohibited Variance;

(v)     on or before February 14, 2025, the Court shall not have entered an order, in form and substance acceptable to the DIP Lender and the Senior Secured Creditor, approving the Debtor's motion seeking approval of certain confirmation procedures relating to confirmation of the plan and the solicitation thereof;

(vi)     on or before February 19, 2025, the Debtor shall not have filed, in form and substance acceptable to the DIP Lender and the Senior Secured Creditor, a plan and disclosure statement;

(vii)     the Court shall not have entered the Final Order on or before February 28, 2025, which order shall be in form and substance reasonably acceptable to the DIP Lender and Senior Secured Creditor;

(viii)   on or before April 11, 2025, the Court shall not have entered, in form and substance acceptable to the DIP Lender and the Senior Secured Creditor, an order confirming the Debtor's plan;

(ix)   on or before April 25, 2025, the Debtor's plan shall not have gone effective in accordance with the terms thereof;

(x)   this Interim Order ceases to be in full force and effect for any reason other than as a result of entry of a Final Order superseding this Interim Order;

(xi)   the Court enters a final order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the consent of the DIP Lender and Senior Secured Creditor;

(xii)   the Court enters an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than DIP Lender and Senior Secured Creditor with respect to any assets of the Debtor without the written consent of the IP Lender and Senior Secured Creditor;

(xiii)   the Debtor (i) creates any postpetition lien or security interests or (ii) incurs or suffer to exist any material postpetition liens or security interests, in each case other than in the ordinary course of business or in accordance with the terms of this Interim Order;

(xiv)   this Interim Order or any other pleading filed in the Chapter 11 Case by the Debtor provides for the nonconsensual priming of the Prepetition Liens and Security Interests, the DIP Liens, or the Adequate Protection Liens without the written consent of the DIP Lender and Senior Secured Creditor;

36

(xv)    the Debtor shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims;

(xvi)    the Court enters the Final Order without (i) providing for any of the specific waivers with respect to "marshalling," "equities of the case," and "surcharge" under section 506(c) of the Bankruptcy Code, or (ii) granting the Senior Secured Creditor the Adequate Protection Liens and Adequate Protection Superpriority Claims with respect to, the Avoidance Actions and proceeds thereof; and

(xvii)    the cessation of all or any material part of the Debtor's business operations.

23.    *Remedies Upon a Termination Event.*

(i)    Prior to exercising the remedies set forth in this paragraph below, DIP Lender or Senior Secured Creditor (as applicable) shall be required to file a motion with the Court seeking emergency relief (the "Stay Relief Motion") on no less than three (3) business days' written notice, which notice period may be concurrent with the Default Notice Period, to (i) the Court, (ii) counsel for the Debtor, (iii) counsel for the Committee (if any), and (iv) the U.S. Trustee, for a further order of the Court modifying the automatic stay, dismissing or converting this Case.

(ii)    In any hearing on the Stay Relief Motion, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, a Termination Event shall have occurred and whether there has been any diminution in value, and the Debtor hereby waives any right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender or the Senior Secured Creditor set forth in this Interim Order, the DIP Loan Facility Documents, or the Prepetition Loan Documents. The delay or failure of the DIP Lender and Senior Secured

37

Creditor, as applicable, to exercise rights and remedies under the DIP Loan Facility Documents or the Prepetition Loan Documents or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Termination Event or anything herein, (x) the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations, Adequate Protection Obligations, and Prepetition Obligations shall have been indefeasibly paid in full in cash; (y) all of the rights, remedies, benefits, and protections provided to the DIP Lender and the Prepetition Secured Parties under this Interim Order shall survive the applicable Termination Event; and (z) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

24. *Post-Termination Rights*. Upon the occurrence of a Termination Event, the Debtor's authority to use Cash Collateral hereunder shall terminate; provided, however, that the Debtor or a trustee appointed for the Debtor's estate may use Cash Collateral to pay payroll and payroll-related expenses such as taxes accrued through and including the Termination Date, up to the amounts set forth in the Budget. The Debtor may seek, and the Senior Secured Creditor may oppose, the continued use of Cash Collateral on any terms that the Debtor wish to propose, and any such request shall be heard on shortened notice such that relief can be entered not later than the occurrence of a Termination Event, provided, however, that the Debtor and the Senior Secured Creditor may stipulate, without the need for a further order of this Court, for this Order to remain in effect temporarily through the date of a hearing on such relief.

38

25.    *No Marshalling*. Subject to entry of the Final Order, the DIP Lender and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral, the Prepetition Collateral, and/or the Adequate Protection Collateral.

26.    *Binding Effect*. The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the DIP Lender, the Prepetition Secured Parties, the Debtor, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor) and shall inure to the benefit of the DIP Lender, the Prepetition Secured Parties and the Debtor and their respective successors or assigns.

27.    *Modification of Automatic Stay*. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit Debtor, the DIP Lender, and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

28.    *Headings*. The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

29.    *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution

of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

30. *No Third-Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party, or incidental beneficiary.

31. *Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order*. The DIP Lender has acted in good faith in connection with this Interim Order and is entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby, unless modification, amendment or vacatur pertains to an authorization to obtain credit or incur debt, or to the granting of a priority lien, that is stayed pending appeal. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including to all rights, remedies, privileges and benefits granted herein.

40

32.    *Indemnification*. The Debtor shall indemnify and hold harmless the DIP Lender, the Prepetition Secured Creditors, and their respective shareholders, partners, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, in accordance with and only if and to the extent provided pursuant to the terms and condition of the DIP Loan Facility Documents and the Prepetition Loan Documents.

33.    *Proofs of Claim*. Neither the DIP Lender nor any of the Prepetition Secured Parties will be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim allowed herein. Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Case or any Successor Case shall not apply to any claim of the DIP Lender or the Prepetition Secured Parties arising under, or in connection with, the DIP Facility Loan Documents, the Prepetition Loan Documents, the DIP Obligations or the Prepetition Obligations, with the stipulations contained in Paragraph C herein being deemed to be a filed proof of claim on behalf of such parties.

34.    *Survival of Interim Order*. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan or plans of reorganization or liquidation in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in the Court.

35. *Controlling Effect of Interim Order*. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

36. *Order Immediately Effective*. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are effective immediately and enforceable upon its entry.

37. *Debtor Authorization to Effectuate Relief*. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

38. *Jurisdiction*. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

39. *Final Hearing*. The final hearing on the Motion shall be held on February [__], 2025, at __:___ _.m. (prevailing Eastern Time) in Courtroom [__], of the United States Bankruptcy Court for the Northern District of Ohio (Western Division), PNC Bank Building, 405 Madison Avenue, Toledo, Ohio 43604. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time), on February [__], 2025. Responses or objections to the Motion and entry of a final order with respect to the Motion must: (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Rules; and (iv) be served upon (a) proposed counsel to the Debtors, Richard K. Stovall, Allen, Stovall, Neuman & Ashton LLP, 10 W. Broad Street, Suite 2400, Columbus, Ohio 43215 (stovall@asnalaw.com); (b) counsel to the DIP Lender/Firelands, Ellen Arvin Kennedy, Dinsmore, 250 W. Main Street, Lexington, Kentucky 40507 (ellen.kennedy@dinsmore.com); (c) counsel to the Master Trustee, Patricia Fugee, FisherBroyles, LLP, 27100 Oakmead Drive, Box 306, Perrysburg, Ohio 43551

42

(patricia.fugee@fisherbroyles.com); (d) counsel to Fifth Third, Kari Balog Coniglio, Vorys, Sater, Seymour and Pease LLP, 200 Public Square, Suite 1400, Cleveland, Ohio 44114 (kbconiglio@vorys.com); (e) the Office of the United States Trustee for the Northern District of Ohio, Attn: Kate Bradley, U.S. Department of Justice, Office of the U.S. Trustee, 201 Superior Avenue E, #441, Cleveland, Ohio 44115 (kate.m.bradley@usdoj.gov)

40.     ; and (f) any statutory committee appointed in these cases.

# # #

43

# EXHIBIT A
# BUDGET

**The Bellevue Hospital**

| | Week Ending 02/07/25 | Week Ending 02/14/25 | Week Ending 02/21/25 | Week Ending 02/28/25 | Week Ending 03/07/25 | Week Ending 03/14/25 | Week Ending 03/21/25 | Week Ending 03/28/25 | Week Ending 04/04/25 | Week Ending 04/11/25 | Week Ending 04/18/25 | Week Ending 04/25/25 | Week Ending 05/02/25 | Week Ending 05/09/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Week Cash Balance** | 240,188 | 845,876 | 185,246 | (0) | 0 | 0 | 0 | 265,985 | 198,109 | (0) | (0) | 246,041 | 0 | 0 |
| | | | | | | | | | | | | | | |
| Cash Collateral Balance (Blocked Account) | 2,278,020 | 2,278,020 | 2,134,391 | 1,533,433 | 1,427,495 | 442,202 | 442,202 | 442,202 | 378,412 | - | - | | | |
| Cash Collateral Draw | | | 143,629 | 600,958 | 105,938 | 985,293 | - | - | 63,790 | 378,412 | - | | | |
| Cash Collateral Draw - Accumulated | | | 744,587 | 850,525 | 1,835,818 | | | 1,899,608 | 2,278,020 | | | | | |
| | | | | | | | | | | | | | | |
| DIP Draw | | | | | | | | | | 345,546 | | 470,579 | 348,221 | |
| DIP Draw Accumulated | | | | | | | | | | | 345,546 | 816,125 | 1,164,346 | 1,164,346 |

**Trended Income Statement**

| | Week Ending 02/07/25 | Week Ending 02/14/25 | Week Ending 02/21/25 | Week Ending 02/28/25 | Week Ending 03/07/25 | Week Ending 03/14/25 | Week Ending 03/21/25 | Week Ending 03/28/25 | Week Ending 04/04/25 | Week Ending 04/11/25 | Week Ending 04/18/25 | Week Ending 04/25/25 | Week Ending 05/02/25 | Week Ending 05/09/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PATIENT INCOME - | | | | | | | | | | | | | | |
| ADJUSTED PATIENT INCOME - CASH | 750,000 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | 960,655 | |
| Other Operating Income - | | | | | | | | | | | | | | |
| Miscellaneous | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | 16,590 | |
| Lease Income | 0 | 0 | 10,569 | 0 | 0 | 0 | 10,569 | 0 | 0 | 0 | 10,569 | 0 | 0 | |
| Medicaid HAP Payment | | | | | | | | 424,924 | | | | | | |
| Total | 16,590 | 16,590 | 27,158 | 16,590 | 16,590 | 16,590 | 27,158 | 441,514 | 16,590 | 16,590 | 27,158 | 16,590 | 16,590 | |
| TOTAL OPERATING INCOME | 766,590 | 977,245 | 1,131,443 | 1,578,203 | 1,083,183 | 1,962,538 | 987,814 | 1,402,169 | 1,041,035 | 1,701,203 | 987,814 | 1,447,824 | 1,325,466 | |
| OPERATING EXPENSE - | | | | | | | | | | | | | | |
| Salaries & Wages | 0 | 784,075 | 0 | 765,385 | 0 | 728,000 | 0 | 765,710 | 0 | 728,000 | 0 | 765,385 | 0 | |
| Employee Benefits | 0 | 191,995 | 97,670 | 169,895 | 103,870 | 191,995 | 97,670 | 181,595 | 111,530 | 169,895 | 78,570 | 211,095 | 103,870 | |
| Medical & Operating Supplies | 9,010 | 236,218 | 134,749 | 151,449 | 185,199 | 161,199 | 134,749 | 141,199 | 141,449 | 183,199 | 165,199 | 134,749 | 156,199 | |
| Pharmacy-Drugs | 44,649 | 43,000 | 48,000 | 43,000 | 43,000 | 43,000 | 43,000 | 48,000 | 43,000 | 43,000 | 43,000 | 43,000 | 43,000 | |
| Utilities | 0 | 1,757 | 20,098 | 18,357 | 50,880 | 18,457 | 5,098 | 0 | 18,357 | 49,180 | 16,757 | 5,098 | 18,357 | |
| Utility Adequate Assurance Deposit | 0 | 0 | 0 | 0 | 71,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Purchased services | 47,243 | 206,453 | 337,272 | 148,010 | 241,794 | 181,063 | 283,812 | 117,026 | 209,228 | 290,489 | 247,796 | 109,242 | 270,160 | |
| Insurance | 0 | 0 | 20,000 | 0 | 40,000 | 0 | 0 | 0 | 0 | 40,000 | 0 | 0 | 0 | |
| Other Expense | 0 | 84,378 | 123,900 | 82,519 | 117,440 | 83,950 | 132,500 | 87,119 | 112,726 | 117,440 | 90,450 | 128,900 | 93,880 | |
| Medicaid Franchise Fee | | | | | | | | | 412,893 | | | | | |
| Interest Expense | 0 | 0 | 0 | 114,587 | 0 | 0 | 0 | 49,396 | 0 | 0 | 0 | 49,396 | 0 | |
| Total | 100,901 | 1,547,876 | 781,689 | 1,493,202 | 853,183 | 1,407,664 | 696,829 | 1,390,045 | 1,049,144 | 1,621,203 | 641,772 | 1,446,865 | 685,466 | |
| NET OPERATING INCOME | 665,689 | (570,631) | 349,754 | 85,001 | 230,000 | 554,874 | 290,985 | 12,124 | (8,109) | 80,000 | 346,042 | 959 | 640,000 | |
| | | | | | | | | | | | | | | |
| Physicians - BPSI - Payroll | - | (55,000) | - | (55,000) | - | (55,000) | - | (55,000) | - | (55,000) | - | (55,000) | - | |
| Physicians - NOMS - Clinic Subsidy | - | - | - | - | - | (74,874) | - | - | - | - | (80,000) | - | - | |
| | - | (55,000) | - | (55,000) | - | (129,874) | - | (55,000) | - | (55,000) | (80,000) | (55,000) | - | |
| | | | | | | | | | | | | | | |
| Chapter 11 - Administrative Expenses | | | | | | | | | | | | | | |
| Bankruptcy Counsel - ASNA Law | 0 | 0 | 0 | 0 | 100,000 | 0 | 0 | 0 | 100,000 | 0 | 0 | 0 | 100,000 | |
| Special Corporate Counsel - Frantz Ward | 0 | 0 | 0 | 0 | 30,000 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 30,000 | |
| Investment Banker - Juniper | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 440,000 | |
| Claims & Notice Agent - Kroll | 40,000 | 35,000 | 35,000 | 30,000 | 30,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 20,000 | 15,000 | 50,000 | |
| United States Trustee | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 72,000 | 0 | |
| Unsecured Creditor Committee Counsel | 0 | 0 | 0 | 0 | 50,000 | 0 | 0 | 0 | 20,000 | 0 | 0 | 0 | 20,000 | |
| KEIP Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 105,000 | 0 | |
| | 60,000 | 35,000 | 35,000 | 30,000 | 230,000 | 25,000 | 25,000 | 25,000 | 190,000 | 25,000 | 20,000 | 192,000 | 640,000 | |
| | | | | | | | | | | | | | | |
| **COMBINED NET Inc./(Loss)- Cash Flow** | 605,689 | (660,631) | 314,754 | 1 | 0 | 400,000 | 265,985 | (67,876) | (198,109) | 0 | 246,042 | (246,041) | - | |
| | | | | | | | | | | | | | | |
| **NET CASH FLOW** | 605,689 | (660,631) | 314,754 | 1 | 0 | 400,000 | 265,985 | (67,876) | (198,109) | 0 | 246,042 | (246,041) | - | |
| | | | | | | | | | | | | | | |
| **Critical Vendor Payments** | - | - | (500,000) | - | - | (400,000) | - | - | - | - | - | - | - | |
| | | | | | | | | | | | | | | |
| **Net Cash Flow Before DIP Financing** | 605,689 | (660,631) | (185,246) | 1 | 0 | (0) | 265,985 | (67,876) | (198,109) | 0 | 246,042 | (246,041) | - | |